AO 106 (Rev. 04/10)  Application for a Search Warrant

AUSA Approval: s/Dan Gridley 07-26-2022

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

a Red HEROSP001 Cell Phone with IMEI
990016011502208; currently in secure evidence storage
at DEA Oklahoma City

) 
) 
) 
) 
) 
)

Case No.  M-22- 541 -AMG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Western _____ District of _____ Oklahoma _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of Fentanyl with Intent to Distribute |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brook Wilson, Special Agent (DEA)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 27, 2022

_____
*Judge's signature*

City and state:  Oklahoma City, Oklahoma

Amanda Maxfield Green, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE CELLULAR TELEPHONE:  A RED HEROSP001 CELL PHONE WITH IMEI: 990016011502208; CURRENTLY IN SECURE EVIDENCE STORAGE AT DEA OKLAHOMA CITY | Case No. M-22-        -AMG |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, DEA Special Agent Brook Wilson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— electronic devices, as further described in Attachment A hereto—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Special Agent (SA) of the Drug Enforcement Administration (DEA).  As such, I am "an investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code; that

is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516. I have been a Special Agent with DEA for approximately 7 years and I have worked numerous conspiracy investigations, including Title III wire cases, and complex, multi-jurisdictional investigations. I am well versed in a multitude of investigative methods, including working confidential sources, interviews, arrests, search warrants, seizure warrants, and analyzing cellular phone data.

3.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, reports provided to me by other law enforcement officers, and statements made by witnesses and other concerned parties.   Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not included each and every fact known to me concerning this investigation.

4.     The property to be searched is **a Red HEROSP001 Cell Phone IMEI: 990016011502208, seized from Terrell BRUNSTON** (hereinafter the **Target Cell Phone 1).  Target Cell Phone 1** is currently located in secure evidence storage at the DEA Oklahoma City District Office.

5.     Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841 have been committed by **BRUNSTON**, and other known and unknown co-conspirators. The facts in this affidavit come

2

from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

6.      I submit this affidavit in support of an application for a search warrant for the **Target Cell Phone 1.** An investigation has revealed that **Target Cell Phone 1** is associated with a Drug Trafficking Organization (DTO) transporting large quantities of fentanyl through the Western District of Oklahoma.

7.      On January 12, 2022, Oklahoma Bureau of Narcotics Agent Anthony Moore observed a tan in color Chevrolet Avalanche with California license plate 35305B1 traveling eastbound on Interstate 40 near El Reno, Oklahoma. Agent Moore observed the vehicle traveling in the far-left lane of travel for approximately 2 miles impeding traffic, which is a violation of Oklahoma Title 47 section 11-309(5). At approximately 10:00 a.m., Agent Moore conducted a traffic stop on the vehicle at mile marker 122 on eastbound Interstate 40. Agent Moore identified the driver as **Guadalupe Green (GREEN)** and the passenger as **BRUNSTON.**

8.      During the course of the traffic stop, Agent Moore asked both **GREEN** and **BRUNSTON** questions regarding their travel and received different conflicting answers from both subjects. While on the traffic stop, OBN

3

Agent Dallas Lang, along with his CLEET certified canine (Yeko), arrived. Due to the inconsistent stories of both subjects the canine was deployed on the exterior of the vehicle. The canine displayed, to Agent Lang, a positive alert on the vehicle. Additionally, both subjects admitted to smoking marijuana inside of the vehicle.

9.      Subsequent to the canine alert, a probable cause search was conducted on the vehicle. During a search of the vehicle, nine bundles of a white powdery substance were located under the hood of the vehicle. A field test conducted on contents of these bundles resulted in a presumptive positive for the presence of fentanyl. The approximate gross gram weight of these bundles is 9.7 kilograms. At this time **GREEN** and **BRUNSTON** were placed under arrest. Agent Moore read **GREEN** her Miranda rights and **GREEN** agreed to speak to investigators without the presence of an attorney. At the same time Agent Lang read **BRUNSTON** his Miranda rights and he agreed to speak with investigators without the presence of an attorney.

10.     Due to the location of the traffic stop (on the shoulder of Interstate 40) the subjects and the vehicle were moved to a parking lot on the south side of the interstate at the Country Club Road exit. Once in the lot, your affiant was contacted and responded to the location, arriving at approximately 12:30 p.m. On scene, your affiant conducted an interview with **GREEN. GREEN** stated that she had been contacted by a subject in Mexico, via Instagram. **GREEN** stated that she only knew the subject by his Instagram account name of "Chikilin.1" and that

4

she had been contacted by him before to transport illegal drugs. **GREEN** stated that she took the aforementioned Chevrolet Avalanche to an unknown address in San Luis, Arizona. **GREEN** stated that once she dropped it off, that she went for a walk, but that she knew that unknown subjects were going to hide illegal drugs somewhere in the vehicle. **GREEN** stated that she was told to take the illegal drugs to Cleveland, Ohio. **GREEN** stated that she then drove the vehicle to Phoenix, Arizona to pick up her boyfriend who was to accompany her on the trip. **GREEN** stated that once in Phoenix, her boyfriend was unable to go, but he spoke with his friend, **BRUNSTON**, who agreed to travel with **GREEN** for $1,000.00. **GREEN** stated that **BRUNSTON** was aware that there were illegal drugs within the vehicle and that she was present when her boyfriend texted and called **BRUNSTON** informing him of the nature of the trip.

11.     **GREEN** stated that she was going to be paid $9,000.00 for taking the illegal drugs to Cleveland, Ohio, and that she was going to pay **BRUNSTON** using part of her $9,000.00 payment. **GREEN** stated that she would meet the unknown recipients in Cleveland, Ohio at an unknown hotel where she would be given both her payment for the trip and illegal drug proceeds to be returned to San Luis, Arizona.

12.     Upon completion of the interview with **GREEN**, your affiant conducted an interview of **BRUNSTON**. **BRUNSTON** stated that he had agreed to travel with **GREEN** to Cleveland, Ohio. **BRUNSTON** stated that she had

5

agreed to pay him $1,000.00 for assisting him with the trip. **BRUNSTON** stated that he had no knowledge of the illegal drugs in the vehicle and stated that he did not know how long he would be staying with **GREEN** in Cleveland, Ohio. **BRUNSTON** stated that he has never before received money for traveling with another person and did not question why he was being offered the money. **BRUNSTON** stated that he knew **GREEN** as the girlfriend of his friend, Nick, and that he did not have any other relationship with her.

13.    Based on the foregoing, I know that BRUNSTON is involved with transporting fentanyl within the Western District of Oklahoma.   Moreover, **Target Cell Phone 1** was in BRUNSTON's possession at the time of his arrest. BRUNSTON did not have any other phone in his possession at the time of his arrest.  Therefore, I submit there is probable cause to believe the **Target Cell Phone 1** could lead to the evidence furthering the investigation of the DTO in the Western District of Oklahoma.

14.    The **Target Cell Phone 1** is currently located in secure evidence storage at the DEA Oklahoma City District Office. In my training and experience, I know that the **Target Cell Phone 1** has been stored in a manner in which its contents are (to the extent material to this investigation) in substantially the same state as it was when the device first came into the possession of DEA Oklahoma City.

6

15.     Based on my training, experience, and research; I know that the **Target Cell Phone 1 has** capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

16.     From my training and experience, I know that drug smuggling is often a conspiratorial crime. Individuals who possess controlled substances with the intent to deliver them typically do so in groups with the assistance of others. Drug dealers like BRUSNTON often use their cell phones to communicate with other members of the drug trafficking organization. Records of these communications and the contact information of the smugglers are often saved in the individual's phone.

17.     An examination can reveal the approximate location of the **Target Cell Phone 1** and the user by associating a specific date and time with: historical GPS data, historical cell-site data, and logs of Wi-Fi networks. Additionally, an examination can reveal the **Target Cell Phone 1's** unique identifiers (phone number, IMEI, IMSI, etc.). These unique identifiers can be used to compel material records from the cell phone service provider such as call logs, billing information, and historical cell-site data.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19.     There is probable cause to believe that things that were once stored on the **Target Cell Phone 1** may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods

8

of time before they are overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

20.    *Forensic evidence.*   As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **Target Cell Phone 1** was used, the purpose of their use, who used it, and when.   There is probable cause to believe that this forensic electronic evidence might be on **Target Cell Phone 1** because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

    b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

9

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of

**Target Cell Phone 1** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of **Target Cell Phone 1** to human inspection in order to determine whether it is evidence described by the warrant.

22.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **Target Cell Phone 1** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Brook Wilson
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on July 27th, 2022.

Amanda Maxfield Green
United States Magistrate Judge
Western District of Oklahoma

12

## ATTACHMENT A

The property to be searched is described as: **Red HEROSP001 Cell Phone IMEI: 990016011502208, seized from Terrell BRUNSTON**; hereinafter the "**Target Cell Phone 1**". **Target Cell Phone 1** is currently located in secure evidence storage at DEA Oklahoma City, located at 901 NE 122nd Street, Oklahoma City, Oklahoma. This warrant authorizes the forensic examination of **Target Cell Phone 1** for the purpose of identifying the electronically stored information described in Attachment B.

a. **a Red HEROSP001 Cell Phone IMEI: 990016011502208**



# ATTACHMENT B

1.      All records on **Target Cell Phone 1** described in Attachment A that relate

to violations of 21 U.S.C. § 841(a)(1) involving Terrell BRUNSTON, including:

        a.      lists of customers and related identifying information;

        b.      types, amounts, and prices of drugs smuggled as well as dates, places, and amounts of specific transactions;

        c.      any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

        d.      all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned **Target Cell Phone 1** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history, including:

        a.      records of Internet Protocol addresses used;

        b.      records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

        c.      photographs.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.